MARGARET E. BEAGAN *vs.* CITIZENS SAVINGS BANK.

JANUARY 15, 1943.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J.   This is a bill in equity to restrain the fore-closure of a mortgage on certain real estate in the city of Providence.  After a hearing in the superior court on bill, answer and proof, a decree was entered dismissing the bill. The cause is before us solely upon the complainant's appeal from this decree.

The bill, in substance, alleges that if the respondent is permitted to proceed with a foreclosure sale under the mortgage on the ground that the complainant failed to reimburse the respondent for certain taxes, which the latter paid to the city of Providence without the former's knowledge or notice to her, she will suffer great loss and irreparable injury; and that, notwithstanding complainant's offer and willing-ness to "ultimately" refinance said mortgage "within a reasonable time", the respondent has refused to grant to the complainant such reasonable time.  Respondent's answer denies these allegations.

The issue thus raised by the pleadings requires a rather full statement of the facts as disclosed by the record before us.  The mortgage under consideration, dated October 4, 1940, was given to the respondent by the complainant to secure her promissory note of even date for $5400, payable in one year with interest at the rate of 5% per annum semi-annually in advance.  Interest for six months in advance was paid at the time of the loan.  No interest was paid by the complainant on April 4 or October 4, 1941.

About October 14, 1941, the complainant represented to the respondent, through either her son Joseph E. Beagan or her son Robert P. Beagan, both of whom are lawyers and both of whom admittedly acted in her behalf throughout this entire transaction, that she was unable to pay any interest charges at that time, whereupon the respondent in-stituted foreclosure proceedings in accordance with the terms of the mortgage.  These proceedings were shortly

thereafter discontinued by the respondent upon complainant's assurance that the interest in arrears would be paid by December 1, 1941.

On October 30, 1941, the respondent wrote to the complainant that it had been "obliged to pay the 1940 Providence taxes in the amount of $305.21", and that when the mortgage was brought up to date "on or before December 1, 1941" arrangement should be made "about reimbursing" the respondent for the money advanced and paid out by it for said taxes. When the complainant failed to pay by December 1, 1941, as she had agreed, the respondent, by letter of that date, called attention to such failure and notified the complainant that unless the matter was attended to at once it would institute foreclosure proceedings under the mortgage.

In letters between the parties of even date, December 12, 1941, complainant's sons agreed to pay "the sum of $135 each and every month commencing December 17, 1941" until "all interest payments and unpaid taxes" were brought up to date. The respondent's letter further states that it accepted such arrangement "on condition" that the complainant make payments regularly on or before the 17th day of each and every month, and it reserved the right to take such steps as it might deem necessary to protect its rights under the mortgage "in case of default in any of said monthly payments."

When the complainant failed to pay according to this agreement, the respondent again instituted foreclosure proceedings. Further negotiations resulted in another agreement for the payment of over $900 then owing to the respondent for interest and taxes. This agreement is evidenced by a letter from the complainant's sons to the respondent, dated January 15, 1942. The body of the letter is as follows:

"Dear Sirs:

"In consideration of your postponing the foreclosure sale under mortgage given you by Margaret E. Beagan

covering property 476-478 Hope Street, Providence, R. I. now being advertised to take place January 17, 1942, to February 21, 1942, we the undersigned hereby agree to pay on or before the 17th day of February, 1942 the sum of Four Hundred Five Dollars ($405), and the sum of One Hundred Thirty-five Dollars ($135) each and every month thereafter *until the interest payments and unpaid taxes are brought up to date* and you are reimbursed for attorneys' fees, auctioneer's fees, and advertising in connection with this matter.

"We further agree that in the event it becomes necessary for the Citizens Savings Bank to proceed with this foreclosure by reason of our failure to make said payment of Four Hundred Five Dollars ($405), we will not in any way interfere with said foreclosure sale." (italics ours)

In compliance with this agreement, the respondent postponed the foreclosure sale from January 17 to February 21, 1942. The $405, which the complainant was to pay on or before February 17, 1942, was tendered to and accepted by the respondent on February 20, 1942, whereupon the foreclosure sale was postponed to April 16, 1942. Complainant failed to pay the installment of $135 due and payable on March 17, 1942, as required by her last-quoted agreement, and she has never tendered nor offered to make any such payment in accordance with that agreement.

In April 1942, and before the date fixed for the foreclosure sale, the respondent paid the 1941 taxes on complainant's property to the city of Providence. Furthermore, at complainant's request and for her convenience the respondent postponed the foreclosure sale from April 16 to April 23, 1942. On April 22, 1942, the complainant brought the present bill on the grounds hereinbefore briefly stated.

The complainant rests her claim for affirmative relief in equity by way of injunction on the following contention. She argues that under her agreement of January 15, 1942, the respondent was to apply the $405, which she paid on February 20, 1942, in satisfaction of three interest installments of $135 each, two of which were in arrears and one that would

become due on April 4, 1942, thus paying interest on the mortgage to October 4, 1942. She further argues that her failure to pay $135 each and every month from and after February 17, 1942, as required by her agreement, was an immaterial breach on her part as such payments were not "of the essence" of that agreement, the purpose of which was to remove the mortgage from default for the nonpayment of interest. The respondent, on the other hand, contends that the only understanding between the parties as to the application of the $405 and of the monthly payments of $135 is expressed in complainant's letter to the respondent of January 15, 1942, namely, that she was to pay all sums called for by that letter at least "until the interest payments *and* unpaid taxes" were brought up to date. (italics ours)

With reference to the application of the $405, Robert P. Beagan, who was the only witness for the complainant, testified as follows: "They started to advertise the property in January and *my brother* took up the question of foreclosure with the Director of the bank. As a result of *his talk* with the Director of the bank the Director was able to persuade the bank that instead of having to refinance our mortgage that we make certain payments on or before the 17th of February, the sale being advertised for the 21st of February. The first payment was to be in the amount of $405.00. This figure of $405.00 was arrived at by taking the three interest periods, namely, the period of April 1941, October 1941, and April 1942, which represented $405.00." (italics ours) This testimony, even if given full effect because unchallenged, is plainly contradicted by the letter which the two brothers signed in behalf of their mother on January 15, 1942.

Furthermore, even though respondent's representative who had charge of the matter before us did not testify because of illness, a close examination of the evidence shows that the sum of $405 may have been fixed on a different basis from that claimed by the witness Beagan. We recall that on December 12, 1941 the complainant agreed to pay $135 each and every month "commencing December 17,

1941." It may well be that the sum of $405 payable on February 17, 1942, which the complainant contends was in payment of accrued and future interest, represented monthly payments at the rate of $135 a month for the months of December, January and February on the amount due to the respondent "for interest payments *and* unpaid taxes." (italics ours) This view of the evidence is strengthened by the fact that the agreement of January 15, 1942 contains a similar provision to that in the agreement of December 12, 1941, namely, the payment of $135 each and every month "for interest payments and unpaid taxes." In this state of the record, all we can say is that the evidence in reference to the application of the $405 is conflicting and fairly open to different reasonable conclusions.

But, assuming that the sum of $405 was to be applied as the complainant contends, we cannot agree with the further contention that her failure to pay $135 each and every month after February 17, 1942 was an immaterial breach of her agreement of January 15, 1942. Both sums were to be paid at the stipulated time and manner, at least until the interest payments and unpaid taxes were fully paid. The agreement is an entire agreement, with interdependent promises not severable from each other. It is clear from the evidence that the complainant not only has failed to perform a material part of her agreement with the respondent without legal justification, but also that she has never even offered to perform that part of her agreement. At best, all she offers to do by way of allegation in her bill is a willingness to ultimately refinance the mortgage within a reasonable time. It is fundamental that a defaulting party on a material matter is in no position to invoke affirmative relief in equity.

The complainant further argues that the respondent treated her unfairly when it paid the 1941 tax to the city of Providence, in April 1942, without first notifying her. There is no merit to this claim. It is undisputed that the city tax assessed against the mortgaged property was payable in

October 1941. The mortgage deed provides that it is given upon the express condition that the mortgagor shall pay the taxes "as they become payable". This the complainant failed to do, and no act of the respondent was instrumental in causing such breach. In the circumstances, the respondent was within its legal rights to pay that tax, and, further, to treat such failure as a ground for the foreclosure of the mortgage even though there were no default in payment of the interest. *Rose* v. *Devitt,* 52 R. I. 343; *Rotondo* v. *Geremia,* 45 R. I. 378. In the circumstances, the respondent, which has done nothing to prejudice the complainant in any way, should not be denied its clear legal right.

The appeal of the complainant is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Joseph H. Coen, Joseph E. Beagan, Robert P. Beagan,* for complainant.

*Benjamin F. Lindemuth, Henshaw, Lindemuth & Siegl,* for respondent.